IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUITZA PAGAN,<br>o/b/o Y.L.P., a minor,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | Civil No. 1:25-CV-02278<br><br><br><br><br><br>(Chief Magistrate Judge Bloom) |

## MEMORANDUM OPINION

### I. Introduction

Yuitza Pagan filed an application under Title XVI of the Social Security Act for supplemental security income on behalf of her minor son, Y.L.P. on July 26, 2023.[1] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Y.L.P. was not disabled since the date of the application.[2]

Pagan now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant

[1] Tr. 14.
[2] Tr. 26.

evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Pagan filed for supplemental security income on behalf of her son, Y.L.P, who was 13 years old at the time of his application.[4] He alleged an onset date of July 1, 2019.[5] Y.L.P. alleged disability based on attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, learning disability, and autism spectrum disorder.[6]

An ALJ held a hearing on Y.L.P's disability application on November 26, 2024.[7] Y.L.P. and his mother, Pagan, both appeared and testified at this hearing.[8] Following this hearing, on January 29, 2025, the ALJ issued a decision denying Y.L.P's application for supplemental security income.[9] The ALJ first concluded that Y.L.P. had not engaged

---

[3] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[4] Tr. 15.
[5] Tr. 49.
[6] *Id.*
[7] Tr. 14.
[8] *Id.*
[9] Tr. 26.

in substantial gainful activity since his application date.[10] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Y.L.P. suffered from severe impairments of ADHD, autism spectrum disorder, oppositional defiant disorder, unspecified depressive disorder, and anxiety disorder.[11]

At Step 3, the ALJ assessed Y.L.P.'s functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being, and concluded that Y.L.P. does not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under the Commissioner's regulations.[12]

Regarding acquiring and using information, the ALJ noted that Y.L.P. maintained fair grades, progressed through school without repeating a grade, was reportedly doing well academically with no significant concerns from parents or teachers, and demonstrated the

---

[10] Tr. 15.
[11] *Id.*
[12] Tr. 16.

ability to read, spell, and perform basic mathematical calculations.[13] Teacher reports reflected "at worst, mostly obvious problems with respect to such items as providing organized oral explanations, expressing written ideas, learning new materials, recalling previously learned materials, and applying problem-solving skills."[14] Although two teachers reported a very serious problem understanding and participating in class discussion, Y.L.P. reported remaining optimistic despite his diagnoses and possessed a strong desire to fit in.[15] The ALJ further noted that "three teachers agreed that he had mere slight problems with comprehending oral instructions, understanding school and content vocabulary, and reading and comprehending written materials."[16] Based on this evidence, the ALJ concluded that Y.L.P. has a less than marked limitation with acquiring and using information.[17]

In attending and completing tasks, the ALJ found a less than marked limitation, noting the record and teachers' report questionnaires

---

[13] Tr. 19.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

were mixed.[18] While two teachers reported very serious difficulties with carrying out multi-step instructions, staying organized, completing work without careless mistakes, and working without distraction, a third teacher assessed mostly obvious problems.[19] The overall record showed improvement with an individualized education plan ("IEP") and counseling support, mild impairment in attention and concentration, intact memory, low-average cognitive functioning, supporting a less than marked limitation in attending and completing tasks.[20]

The ALJ next found a less than marked limitation in interacting with or relating to others.[21] She noted the record supported that Y.L.P. appeared socially appropriate with others and lived with his young sister and mother without major incident, and recent mental status examination supported that Y.L.P. is alert and oriented to people, time, and place at all times.[22] Despite recent unspecified depressive disorder and oppositional defiant disorder diagnoses, his teacher questionnaires showed "at worst obvious problems with obeying rules and authority,

---

[18] Tr. 20.
[19] *Id.*
[20] *Id.*
[21] Tr. 21-22.
[22] Tr. 22.

relating experiences, and using language appropriate to the si*tuation and listen[ing]," and recent medical records indicated that -he had no difficulty making or maintaining friendships with peers.[23]

Regarding his ability to care for himself, the ALJ found that Y.L.P. had a less than marked limitation, noting the record supported that, while not perfect, Y.L.P had ability to do so without significant problems.[24] Although Y.L.P. acknowledged attention difficulties, nothing even approaching the examples of marked behaviors were present in the record.[25] Rather, the record showed an ability to communicate emotions and feelings, participate in orchestra, and connect with his teachers and recent mental status examinations were normal, supporting a less than marked limitation in caring for himself.[26]

The ALJ found a less than moderate limitation in health and physical well-being. The ALJ considered that Y.L.P. took no medication for his impairments, reported few symptoms, made moderate progress in therapy, experienced no significant treatment-related side effects, and

---

[23] *Id.*
[24] Tr. 24.
[25] *Id.*
[26] *Id.*

reported being able to dress, bathe, groom, and help with household chores.[27] Additionally, although he had asthma and exhibited some depressive symptoms, his asthma was not significantly limiting and he continued psychological testing despite irritability.[28] Further, the ALJ assessed no limitations in manipulating objects and moving about, considering Y.L.P's activities of video games and bike riding.[29]

In making these findings, the ALJ found persuasive the opinions of the state agency psychological consultants, who concluded that the claimant's depressive disorder, autism, oppositional defiant disorder, and ADHD resulted in less than marked limitations in all domains except moving about and manipulating objects and health and physical well-being.[30] The ALJ found these opinions generally supported by the consultants' review of the evidence and consistent with the longitudinal record showing mild to moderate symptoms and overall improvement, although the ALJ did not adopt the finding of no limitation in health and physical well-being.[31]

---

[27] Tr. 25
[28] *Id.*
[29] Tr. 23.
[30] Tr. 25.
[31] *Id.*

The ALJ found the opinion of consultative examining physician, Dr. Stacy Trogner, persuasive.[32] Dr. Trogner observed that Y.L.P was irritable and depressed but coherent and goal-directed, with intact recent and remote memory, mildly impaired memory overall, and poor insight and judgment.[33] Although Y.L.P. had poor emotional connection due to depression and poor social skills, Dr. Trogner noted Y.L.P. was unmedicated.[34] The ALJ concluded that her opinion was supported by her own examination and was consistent with the record showing, at most, moderate symptoms.[35] Accordingly, because the ALJ did not assess two "marked" or one "extreme" limitation in any domain, the ALJ concluded that Y.L.P. did not meet the criteria for supplemental security income and denied his application.[36]

This appeal followed. On appeal, Pagan argues that the ALJ should have found that Y.L.P. had marked limitations in (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] Tr. 25-26.

relating with others, and (4) his ability to care for himself.[37] She further contends that the ALJ erred in giving greater weight to Dr. Trogner's consultative examining opinion over the teacher report questionnaires.[38] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Child Disability Applications – Standard of Review

The Social Security Act considers a child disabled if the child has a severe physical or mental impairment such that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."[39] A claimant must show that he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[40] Such an

---

[37] Doc. 13 at 15.
[38] *Id.* at 21.
[39] 42 U.S.C. § 1382c(a)(3)(B).
[40] *Id.* § 1382c(a)(3)(C)(i).

impairment must meet, medically equal, or functionally equal a listed impairment.[41]

An ALJ follows a three-step process to determine if a child is disabled under the Act.[42] The ALJ must sequentially determine (1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment or combination of impairments that is severe; and (3) whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment.[43] To determine if an impairment functionally equals a listing, the ALJ considers six domains of functioning: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.[44] To be considered functionally equivalent to a listed impairment, an impairment must result in at least two "marked" limitations or one "extreme" limitation in these areas of functioning.[45]

---

[41] 20 C.F.R. § 416.924(d); 20 C.F.R. Part 404, Sbpt. P, App'x 1.
[42] 20 C.F.R. § 416.924(a).
[43] *Id.*
[44] 20 C.F.R. § 416.926a(b)(1).
[45] *Id.* § 416.926a(a).

### B. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[46] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[47] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[48] A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[49] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[50]

---

[46] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[47] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[48] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[49] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).
[50] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[51] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[52] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[53] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[54]

C. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is

---

[51] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[52] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[53] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[54] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

supported by substantial evidence in the record.[55] Judged against this deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

First, Pagan argues that the ALJ ignored favorable evidence of Y.L.P.'s documented limitations from ADHD, autism spectrum disorder, oppositional defiant disorder, unspecified depressive disorder, and anxiety disorder, which allegedly support marked limitations in (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) his ability to care for himself.[56] Specifically, Pagan argues that the ALJ improperly evaluated Y.L.P.'s medical records, school records, and Pagan's testimony, which showed significant academic, behavioral, and emotional difficulties.[57]

Upon review, however, it appears the ALJ did consider the medical and educational evidence that Pagan identifies but did not find that it weighed in favor of a marked limitation in the foregoing domains. The ALJ discussed recent treatment records, which reflected that Y.L.P. was "reportedly about to start the ninth grade, doing well in school, and

---

[55] *Biestek*, 139 S. Ct. at 1154.
[56] Doc. 13 at 15.
[57] *Id.* at 15-18.

perhaps most importantly, both parents and teachers had no concerns."[58] The ALJ also noted that teacher report questionnaires and Y.L.P.'s education records reflected a range of academic, attention, and behavioral issues, but found the overall record showed improvement with an IEP and counseling support.[59] Similarly, the ALJ considered the hearing testimony when noting Y.L.P. lived with his family without significant problems.[60]

To the extent that Pagan argues that the ALJ should have considered other evidence of Y.L.P.'s limitations in the record which she believes supports a finding of disability, such an argument is effectively a request to reweigh the evidence, which we may not do.[61] Because the ALJ examined the records as a whole and adequately explained why the evidence supported a less than marked limitation in the foregoing functional domains, we conclude that substantial evidence supports the ALJ's decision and remand is not warranted.

---

[58] Tr. 19 (citing Tr. 597).
[59] Tr. 20 (citing Tr. 384-407).
[60] Tr. 22.
[61] *See Chandler*, 667 F.3d at 359.

Second, Pagan argues that the ALJ erred by relying upon the findings of consultative examiner, Dr. Trogner, over the opinions provided in the teacher questionnaires.[62] Pagan contends that the ALJ afforded too much weight to Dr. Trogner and not the teacher questionnaires, "which reflect opinions based upon daily observations and were consistent with the mother's testimony[.]"[63] But this again is an impermissible request for the court to reweigh the evidence.

The ALJ considered the teacher questionnaires in finding a less than marked limitation in the six functional domains. For example, with respect to acquiring and using information, the ALJ noted that two teachers reported a very serious problem understanding and participating in class discussions, but all three teachers assessed only slight difficulties in comprehension.[64]

Similarly, regarding Y.L.P.'s limitations in attending and completing tasks, the ALJ acknowledged that two teachers reported very serious difficulties carrying out multi-step instructions, organization,

---

[62] Doc. 13 at 18-19.
[63] *Id.* at 24.
[64] Tr. 19.

and focusing, but a third teacher reported mostly obvious problems.[65] Considering these mixed teacher reports, alongside Dr. Trogner's mental status examination documenting intact memory and a mild impairment in attention and concentration, the ALJ reasonably found a less than marked limitation in acquiring and using information.[66] Further, the ALJ clearly discussed the supportability and consistency Dr. Trogner's opinion with her own examination and the overall record showing, at most, moderate symptoms.[67] Accordingly, the ALJ properly considered the teacher questionaries and relied on Dr. Trogner's consultative report, and remand is not required.

Finally, Pagan contends the ALJ does not make any reference to the opinions of the state agency consultants.[68] But this argument is flatly contradicted by the record. The ALJ found persuasive the opinions of the state agency psychological consultants, which found less than marked limitations in all domains except moving about and manipulating objects and health and physical well-being, reasoning the opinions were

---

[65] Tr. 19-20.
[66] Tr. 20.
[67] *Id.*
[68] Doc. 13 at 22.

generally supported by the consultants' review of the evidence and consistent with the longitudinal record.[69] Thus, there is no basis for remand on this issue.

In sum, we find that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence. Accordingly, we find no error with the decision and conclude that substantial evidence supported the ALJ's evaluation of this case. As such, this decision will be affirmed.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 23rd day of November 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

[69] Tr. 25.